SANDI L. NICHOLS (BAR NO. 100403)
SHAWN T. COBB (BAR NO. 259654)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, California  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516
E-Mail:  snichols@allenmatkins.com
         scobb@allenmatkins.com

Attorneys for Plaintiff
Moonlite Associates LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOONLITE ASSOCIATES LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>      vs.<br><br>CITY OF SANTA CLARA, a municipal corporation,<br><br>            Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>**1) CERCLA COST RECOVERY;**<br>**2) DECLARATORY RELIEF;**<br>**3) CONTRIBUTION AND INDEMNITY PURSUANT TO THE CALIFORNIA HAZARDOUS SUBSTANCE ACCOUNT ACT, CAL. H&S CODE § 79670;**<br>**EQUITABLE INDEMNITY AND CONTRIBUTION;**<br>**5) NUISANCE;**<br>**6) TRESPASS; and**<br>**7) NEGLIGENCE**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

# PARTIES

1. Plaintiff Moonlite Associates LLC is a Delaware limited liability company with its principal place of business in 1350 Old Bayshore Hwy, Suite 800, Burlingame, CA 94010. Since 1977, Moonlite or its predecessors in interest (collectively, "Moonlite") has owned the real property in Santa Clara, California, commonly known as the Moonlite Shopping Center, which is bounded to the west by Kiely Boulevard, to the east by Bowe Avenue, to the north by El Camino Real, and to the south by an alley (the "Property").

2. Moonlite is informed and believes, and on that basis alleges, that at all times relevant to the matters set forth herein, the City of Santa Clara, a municipality in the County of Santa Clara, California, constructed, installed, owned, operated and was responsible for maintenance of the sanitary sewer line that runs under and along the alley behind and adjacent to the southern boundary of the Property, then to the north along Bowe Avenue adjacent to the Property, and then to the east and west along El Camino Real (the "City's Sewer Main"). Moonlite is further informed and believes, and on that basis alleges, that at all times relevant to the matters set forth herein, the City of Santa Clara also constructed, installed, owned, operated and was responsible for maintenance of a siphon connected to the City's Sewer Main near the intersection of El Camino Real and Bowe Avenue, which was designed to divert the flow of the City's Sewer Main and allow it to flow under Saratoga Creek in that location. The siphon is collectively referred to herein as a part of the City's Sewer Main.

# JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

3. This action primarily arises under the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). This Court has supplemental jurisdiction of the state claims asserted in this action pursuant to 28 U.S.C. § 1367. The federal and state claims herein alleged are based on contamination of the same property, include allegations regarding the same parties, and involve the same operative facts. Judicial economy, convenience, and

fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

4. Venue and intra-district assignment is proper in this Court, in the San Jose Division, under the provisions of 28 U.S.C. § 1391(b) and the Northern District of California Civil Local Rules 3-2, as the Property that is the subject of this action and a substantial portion of the events or omissions giving rise to these claims occurred in the Northern District of California. The City of Santa Clara's acts and omissions and conduct pertinent to this action occurred and continue to occur in Santa Clara, Santa Clara County, California.

## GENERAL ALLEGATIONS

5. The Property has been used for commercial purposes since its development in approximately 1961. From approximately 1962 to 1997, a series of dry-cleaning operators operated a dry-cleaning business in one of the shop spaces at the Property. Moonlite has owned the Property since 1977.

6. Moonlite is informed and believes, and on that basis alleges, that a sanitary sewer lateral extended from the dry cleaner space and connected to the City's Sewer Main near what is known as "Manhole 22."

7. Moonlite is informed and believes, and on that basis alleges, that at or about the time of construction of the shopping center in the 1961-1962 timeframe, the City's Sewer Main was installed and included what are known as "wyes"—openings for a sewer lateral connection—in a segment of the City's Sewer Main on Bowe Avenue between "Manhole 24" and "Manhole 14," which segment is adjacent to and runs along the easterly boundary of the Property. Based upon closed circuit television video ("CCTV") of the City's Sewer Main, Moonlite is informed and believes, and on that basis alleges, that no laterals were ever connected at the wyes, thereby leaving openings in the City's Sewer Main at those locations, which the City of Santa Clara knew or should have known about since the City's Sewer Main was constructed and/or the City of Santa Clara took ownership and responsibility for operation and maintenance of the City's Sewer Main.

8. Moonlite is informed and believes, and on that basis alleges, that during the approximately 35 years of dry cleaner operations on the Property between 1962 and 1997, wastewater containing hazardous materials, including but not limited to tetrachloroethylene (also referred to as perchloroethylene, "perc" or "PCE") and other dry cleaning chemicals, likely was discharged into the sanitary sewer lateral extending from the dry cleaner space into the City's Sewer Main running along the alley at the rear of the Property, and that such wastewater containing PCE would then flow through the City's Sewer Main along with sewage and other contents of the City's Sewer Main intended for treatment at the City of Santa Clara's wastewater treatment plant. Moonlite is further informed and believes, and on that basis alleges, that due to the identified openings, as well as other defects, wastewater containing PCE was released into soil, soil gas and groundwater at and in the vicinity of the Property. Moonlite is further informed and believes, and on that basis alleges, that the practice of disposing of separator water and other wastewater into the sanitary sewer was a nearly universal practice of dry cleaners until the 1990s. (IFI's Equipment and Plant Operations Survey, International Fabricare Institute, Focus on Drycleaning, Vol. 13, No. 1 (March 1989).) Moonlite is further informed and believes that the City of Santa Clara knew or should have known of such common dry cleaner industry practices during the operation of the dry cleaners at the Property.

9. Moonlite is informed and believes, and on that basis alleges, that since the City's Sewer Main was installed, the City of Santa Clara failed to adequately inspect, operate, and maintain the City's Sewer Main along and in the vicinity of the Property. An investigation of the City of Santa Clara's Sewer Main in the vicinity of the Property revealed numerous cracks, joint separations, sags, surcharge conditions, and leaks, which Moonlite is informed and believes, and on that basis alleges, caused sewage and other contaminants, including but not limited to wastewater containing PCE and other volatile organic compounds (collectively, "VOCs"), to be released into the surrounding

environment and that such releases have migrated and continue to migrate onto the Property and further offsite across El Camino Real.

10. Moonlite is further informed and believes, and on that basis alleges, that since 1962, releases of VOCs from the City's Sewer Main, including certain discharges, were sudden and accidental due to breaks and cracks in the pipeline, separated joints, and conditions causing surcharging (e.g., heavy storms, clogs and back-ups in the sewer line) resulting in discrete episodes of exfiltration of hazardous substances including wastewater containing PCE from the City's Sewer Main, and that there were other releases from the City's Sewer Main to the surrounding environment, including but not limited to releases to the soil, soil gas, groundwater and/or indoor air at the Property and/or offsite of the Property. Moonlite is further informed and believes, and on that basis alleges, that the existence of and failure by the City of Santa Clara to plug the wyes and otherwise properly inspect and maintain the City's Sewer Main allowed sewage, wastewater containing PCE, and other contaminants to be released into the environment in, around, and from those sewer line defects since the installation of the City's Sewer Main.

11. Following discovery of VOCs on the Property, in 2010, Moonlite engaged experienced environmental consultants and voluntarily undertook further investigation and remediation of the VOCs under the oversight of the Regional Water Quality Control Board – San Francisco Bay Region ("Regional Board"). Moonlite's remediation activities included soil vapor extraction ("SVE") to address VOCs in soil gas and/or indoor air at and near the Property and enhanced reductive dechlorination and in-situ chemical reduction ("ERD/ISCR") to address VOC-impacted groundwater, all pursuant to Regional Board-approved work plans and a Remedial Action Plan ("RAP"). Following further investigation, RAP amendments were prepared and approved by the Regional Board in 2020 for Moonlite to undertake full-scale groundwater remediation of VOCs. In addition, Moonlite has undertaken offsite investigation, mitigation, and monitoring of soil gas and indoor air in offsite properties to address the migration of VOCs attributable to the City's

Sewer Main defects and releases, including discharges due to sudden and accidental releases of VOCs from the City's Sewer Main.

12. Moonlite's environmental investigation of soil, soil gas, and groundwater, as well as its 2011 CCTV of the City's Sewer Main (which was shared with the City of Santa Clara in 2012), have revealed inadequate maintenance and a lack of repair of defective conditions in the City's Sewer Main. Moonlite is informed and believes, and on that basis alleges, that elevated concentrations of VOCs are co-located with methylene blue active substances ("MBAS") (indicator of surfactants, such as detergents and foaming agents) and nitrates in the soil and soil gas at and adjacent to the City's Sewer Main, that such co-location of these contaminants and substances is indicative of sewage and sewer line-related releases, and that such releases from the City's Sewer Main defects have been sources of VOCs that have migrated from the City's Sewer Main onto and under portions of Moonlite's Property and onto or under offsite properties across El Camino Real.

13. In August 2013, the Regional Board issued Cleanup and Abatement Order No. R2-2013-0032 (the "CAO"), naming Moonlite, as the current owner of the Property, and the prior Property owner as the "Dischargers." Moonlite has undertaken the investigation and remediation of VOCs required by the CAO and under the Regional Board's oversight. Moonlite is informed and believes, and on that basis alleges, that a material reason that the Regional Board did not name the City of Santa Clara in the CAO at that time because the Regional Board believed the City's Sewer Main was surrounded by a gravel backfill which provided a migration pathway for alleged contamination from the dry cleaner site, and that such suspected migration pathway accounted for the elevated concentrations of VOCs in certain areas along the City's Sewer Main. Based on more recent information, however, Moonlite is further informed and believes, and on that basis alleges, that the Regional's Board's assumption was incorrect—that the City's Sewer Main is not embedded in gravel backfill and that there is no such migration pathway—and that, instead, the City's Sewer Main defects identified in the CCTV are responsible for the elevated concentrations of VOCs in areas along the City's Sewer Main, including along the

alley behind the Property, along Bowe Avenue, and near and extending from the City of Santa Clara's sewer siphon, onto Moonlite's Property and migrating from the sewer source areas across El Camino Real onto offsite properties.

14. On April 9, 2010, as required by the Government Claims Act sections 810, *et seq.*, Moonlite submitted a claim to the City of Santa Clara for the costs and damages stemming from the release of contaminants from the City of Santa Clara's Sewer Main. On July 6, 2010, the City of Santa Clara rejected that claim and denied any liability to Moonlite.

15. Moonlite and the City of Santa Clara thereafter entered into a Tolling Agreement, which was extended 23 times, tolling the statute of limitations and other defenses based upon the passage of time for Moonlite's claims. The Twenty-Third Extension of Tolling Agreement expired on January 18, 2024, and provided that any claims must be filed within sixty (60) days thereafter. This Complaint was filed within that sixty-day period and is therefore timely.

16. Moonlite has alone incurred the response costs to investigate, remediate, mitigate, and monitor the VOCs released, disposed and discharged from the City's Sewer Main. To date, the City of Santa Clara has refused to reimburse Moonlite for the City of Santa Clara's share of past costs or to agree to pay any share of future costs to address the VOCs in soil, soil gas, groundwater and/or indoor air at the Property and at offsite properties resulting from the acts and omissions of the City of Santa Clara and the releases, disposal, and discharges of hazardous substances from the City's Sewer Main, as more fully set forth herein.

## FIRST CAUSE OF ACTION
### (CERCLA COST RECOVERY:  42 U.S.C. § 9607(a))

17. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

18. The City's Sewer Main is a "facility" within the meaning of 42 U.S.C. § 9601(9).

19. There have been releases of hazardous substances at, on, beneath, around, and in the vicinity of the Property from the City's Sewer Main. The substances that have been identified in the soil, soil gas, groundwater, and/or indoor air at, on, beneath, around and in the vicinity of the Property and at portions of the adjacent City Sewer Main, including but not limited to PCE and its degradation products, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14) and as that term is used herein. Releases and threatened releases of hazardous substances at, on, beneath, around, and in the vicinity of the Property resulted from the operations, activities, inactions, and omissions of the City of Santa Clara with respect to the City's Sewer Main.

20. The City of Santa Clara is a "person" as defined by 42 U.S.C. § 9601(21). The City of Santa Clara is liable pursuant to 42 U.S.C. § 9607(a)(1) and (a)(2) as the current owner and operator of the City's Sewer Main and as the owner and operator of the City's Sewer Main at the time of the release and disposal of hazardous substances.

21. Moonlite has incurred, and will incur in the future, necessary response costs, including costs of investigation, removal and/or remedial actions, in the investigation, remediation, mitigation, and monitoring of the releases and threatened releases of hazardous substances at and in the vicinity of the Property attributable to the discharges and releases of wastewater containing VOCs from the City's Sewer Main. Such activities are taking place with oversight and direction from the RWQCB. All costs incurred, or to be incurred, by Moonlite in connection with the investigation, remediation, mitigation, and monitoring of VOCs at the Property and offsite properties are necessary costs of response consistent with the provisions of CERCLA and the National Contingency Plan. Such response costs include the investigation and remediation of soil, soil gas, and groundwater, and the negotiation of access agreements for and installation of appropriate engineering or institutional controls in offsite properties. The City of Santa Clara is liable for Moonlite's necessary response costs incurred and to be incurred by Moonlite to address the contamination at and around the Property and at offsite properties attributable to the

releases of hazardous substances, including wastewater containing PCE and other VOCs, from the City's Sewer Main.

22. Moonlite continues to incur response costs and other costs in connection with the investigation, remediation, mitigation, and monitoring of the Property and offsite properties as a result of ongoing efforts to cleanup, abate, remediate, remove, and mitigate hazardous substances from the environment and indoor air attributable to releases from the City's Sewer Main.

23. The City of Santa Clara is liable to Moonlite pursuant to 42 U.S.C. § 9607(a) for the past, present, and future necessary costs of response, including, without limitation, investigation, remediation, mitigation, and monitoring expenses; Regional Board oversight costs; and interest accrued and accruing on said amounts, resulting from the releases of hazardous substances from the City's Sewer Main due to the City of Santa Clara's failure to adequately construct, inspect, repair, and maintain the City's Sewer Main, in an amount to be determined at the time of trial

## SECOND CAUSE OF ACTION

### (DECLARATORY RELIEF)

24. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

25. An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Moonlite contends, and the City of Santa Clara denies, that the City of Santa Clara is responsible for contamination at, around, and in the vicinity of the Property and offsite of the Property across El Camino Real attributable to releases and discharges of hazardous substances, including wastewater containing PCE and other VOCs, from the City's Sewer Main, and that the City of Santa Clara is obligated to pay the costs of the environmental investigation, remediation, monitoring, and mitigation relating to such contamination and any other related damages.

26. Because the extent and magnitude of the contamination offsite of the Property is not fully known at this time, and the investigatory and remedial work are ongoing, Moonlite will incur additional necessary fees and costs, including but not limited to investigatory, remedial, mitigation and monitoring expenses and associated attorneys' fees and oversight costs in the future, and will incur additional damages. Such costs will include, but not be limited to, costs and fees associated with the negotiation of access agreements and installation of appropriate engineering or institutional controls in offsite properties owned by third parties.

27. Moonlite desires a judicial determination of its rights and duties and a declaration that the City of Santa Clara is liable to Moonlite for damages, fees, and costs incurred or to be incurred by Moonlite as a result of the releases of wastewater containing hazardous substances from the City's Sewer Main.

28. Moonlite is entitled to a declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2), 28 U.S.C. § 2201, California Code of Civil Procedure § 1060 and/or other applicable law establishing the liability of the City of Santa Clara for such past, present and future damages, fees and costs for the purpose of this and any subsequent action or actions. A judicial declaration is necessary and appropriate under the present circumstances for Moonlite to ascertain its rights and duties.

### THIRD CAUSE OF ACTION

### (CONTRIBUTION AND INDEMNITY:  CAL. H&S CODE § 79670)

29. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

30. The Carpenter-Presley-Tanner Hazardous Substance Account Act (formerly Health & Safety Code §§ 25300 et seq.) was recodified, as of January 1, 2024, in California Health & Safety Code §§ 78000 et seq. (the "HSAA"), to encourage the expedient cleanup of "hazardous substances" that have been released into the environment. In furthering this goal, the California Legislature included the statutory right of

contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

31. Section 79670(a) of the HSAA provides that "[a] person who has incurred response or corrective action costs in accordance with [the HSAA] or the federal act may seek contribution or indemnity from any person who is liable pursuant to [the HSAA]."

32. A "liable person" is defined in section 78145 of the HSAA as "those persons described in section 107(a) of the federal act (42 U.S.C. Sec. 9607(a))." "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. As set forth above, the City of Santa Clara owned and operated and continues to own and operate the City's Sewer Main from which hazardous substances were released and disposed over decades due to unmaintained and unrepaired defects (including broken pipes, separated joints, sags, and the unplugged wyes) and sudden and accidental discharges and disposal of wastewater containing PCE and other VOCs due to surcharging conditions causing discrete episodes of exfiltration from the City's Sewer Main.

33. As a direct and proximate result of the City of Santa Clara's actions and inactions that contributed to releases and migration of hazardous substances at and in the vicinity of the Property and offsite properties, Moonlite has incurred response costs in accordance with the HSAA.

34. Moonlite has given the California Department of Toxic Substances Control ("DTSC") notice of the filing of this lawsuit, as required by Health & Safety Code § 79670(c).

35. As a direct and proximate result of the actions, inactions, and conduct of the City of Santa Clara as alleged herein, and due to the strict liability imposed by the HSAA, Moonlite is entitled to indemnity and contribution from the City of Santa Clara under section 79670(a) of the California Health & Safety Code for all response costs incurred

that are attributable to such conduct by the City of Santa Clara and the defects, conditions, and releases of wastewater containing hazardous substances at and from the City's Sewer Main. Such costs may include the investigation, remediation, monitoring, and mitigation of hazardous substances at and in the vicinity of the Property, and the costs and fees for investigation, remediation, and mitigation at offsite properties owned by third parties, including without limitation the negotiation of access agreements and installation of appropriate engineering or institutional controls.

## FOURTH CAUSE OF ACTION
### (EQUITABLE INDEMNITY AND CONTRIBUTION)

36. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

37. Moonlite has incurred and will continue to incur costs to investigate, remediate, mitigate, and monitor releases of wastewater containing hazardous substances that Moonlite is informed and believes, and on that basis alleges, have occurred at and in the vicinity of the Property due to releases and discharges from the City's Sewer Main since 1962. The City of Santa Clara is solely responsible for the maintenance and repair of the City's Sewer Main and for the damages and costs associated with the City of Santa Clara's failure to adequately maintain and repair its Sewer Main, including costs, fees, and damages resulting from releases, including sudden and accidental releases, of wastewater containing PCE and other hazardous materials due to the inadequate maintenance, repair, and/or surcharging conditions resulting in discrete episodes of exfiltration at, of and from the City's Sewer Main (such as from pipeline breakage, separated joints, sewer line blockage, surcharge conditions resulting in discrete episodes of exfiltration), and based on other negligent actions and inactions by the City of Santa Clara.

38. Moonlite has paid and, as a result of the City of Santa Clara's ongoing refusal to pay for the environmental investigation, remediation, monitoring and mitigation of portions of the Property and offsite properties due to contamination migrating from the releases from the City's Sewer Main, Moonlite will continue to pay more than its fair share

of any joint or joint and several obligation. Therefore, Moonlite is entitled to contribution and indemnity from the City of Santa Clara for all costs it has incurred or will incur that are attributable to the City of Santa Clara's conduct as alleged herein, and to the releases of wastewater containing PCE and other VOCs and contaminants from the City's Sewer Main.

## FIFTH CAUSE OF ACTION
## (CONTINUING NUISANCE)

39. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

40. Moonlite is the current owner of the Property.

41. The City of Santa Clara, by acting or failing to act, caused or contributed to the ongoing release and disposal of wastewater containing PCE and other hazardous materials at and in the vicinity of the Property, creating a condition that is harmful to health, indecent or offensive to the senses, and an obstruction to the free use of the Property, so as to interfere with the comfortable enjoyment of life or property.

42. The presence of hazardous substances at and around the Property has caused Moonlite to incur fees and costs to investigate, remediate, mitigate, and monitor the contamination, and has caused other harm that has interfered with Moonlite's use or enjoyment of the Property.

43. Moonlite did not give permission or otherwise consent to the City of Santa Clara's conduct.

44. The presence of environmental contamination has already impacted and threatens to adversely impact the soil, soil gas, and groundwater at and under the Property due to ongoing migration, and the requirements imposed to address the contamination are such that an ordinary person would be reasonably annoyed or disturbed by the City of Santa Clara's conduct, including its failure to adequately inspect, maintain and repair the City's Sewer Main.

45. Moonlite has been harmed as a result of the City of Santa Clara's conduct, as more fully set forth above, and has incurred and will continue to incur damages, including fees and costs to investigate, remediate, and monitor the contamination caused by the releases of wastewater containing PCE and other hazardous substances from the City's Sewer Main. The significant impacts of the environmental contamination at and in the vicinity of the Property outweighs any public benefit of the City of Santa Clara's conduct; to the contrary, the unaddressed defects in the City's Sewer Main are to the public's and Moonlite's detriment.

## SIXTH CAUSE OF ACTION
### (CONTINUING TRESPASS)

46. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

47. Moonlite is the current owner of the Property.

48. The City of Santa Clara intentionally, recklessly, or negligently caused the release and disposal of hazardous substances on and around the Property, which continue to migrate at and under the Property.

49. Moonlite did not give permission or otherwise consent to the City of Santa Clara's conduct.

50. Moonlite has been harmed as a result of the City of Santa Clara's conduct, as more fully set forth above, and has incurred damages, including fees and costs to investigate, remediate, mitigate, and monitor the contamination caused by the releases of wastewater containing PCE, other VOCs and contaminants, and other damages.

## SEVENTH CAUSE OF ACTION
### (NEGLIGENCE)

51. Moonlite realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

52. As the owner and operator of the City's Sewer Main for over sixty years, the City of Santa Clara has had and continues to have a duty to properly and adequately

inspect, maintain, and repair the City's Sewer Main, to prevent the release and migration of wastewater containing PCE, other VOCs, contaminants, and sewage from the City's Sewer Main, in order to avoid harm to property, human health, and the environment.  Such duty includes protecting the Property and properties in its vicinity by preventing the release of wastewater containing PCE, other VOCs and hazardous substances onto, under, at, and in the vicinity of the Property.

53.   The City of Santa Clara breached that duty by causing or allowing the disposal, discharge, and releases of wastewater containing VOCs and hazardous substances from the City's Sewer Main during its decades of ownership and operation of the City's Sewer Main by its incomplete, inadequate, and negligent inspection, maintenance, and repair of the City's Sewer Main, all of which resulted in broken pipes, separated joints, sags, unplugged wyes, and surcharge conditions causing discrete episodes of exfiltration of sewer line contents, including wastewater containing PCE and other VOCs and hazardous substances.

54.   The releases, discharge, and disposal of hazardous substances, including wastewater containing PCE and other VOCS, from the City's Sewer Main, were the direct and proximate cause of contamination that has impacted soil, soil gas, groundwater, and/or indoor air on the Property and offsite properties in its vicinity.  Such contamination attributable to the releases, discharges, and disposal from the City's Sewer Main has required Moonlite to incur significant past costs, and will require Moonlite to incur significant future costs, fees, and damages resulting from such releases, including sudden and accidental releases of hazardous materials due to the City of Santa Clara's inadequate maintenance, repair, and/or surcharging of the City's Sewer Main (such as from pipeline breakage, separated joints, blockages, and surcharge conditions resulting in discrete episodes of exfiltration), and based on other negligent actions and inactions by the City of Santa Clara.

55.   As a result, Moonlite is entitled to recover damages from the City of Santa Clara for the fees and costs incurred and to be incurred to investigate, remediate, mitigate,

and monitor the contamination stemming from the City's Sewer Main releases, disposal, and discharges, and other and further relief as allowed by law.

**PRAYER**

Moonlite prays that judgment be entered in its favor as follows:

1. Against the City of Santa Clara under CERCLA for cost recovery for the past, present, and future response costs incurred by Moonlite to investigate, remediate, mitigate and monitor the VOCs at and under the Property and offsite properties attributable to the releases and threatened releases of hazardous substances from the City's Sewer Main in an amount to be proven at trial;

2. For a judicial declaration that the City of Santa Clara is liable for past, present, and future response costs incurred by Moonlite to address the hazardous substances, at, on, under or around the Property and its vicinity, including offsite properties owned by third parties, attributable to releases and threatened releases from the City's Sewer Main in an amount to be proven at trial;

3. Against the City of Santa Clara for equitable indemnification;

4. Against the City of Santa Clara for contribution under state law;

5. Against the City of Santa Clara for any and all general, consequential and compensatory damages to be proven at trial;

6. Against the City of Santa Clara for damage to property according to proof;

7. Against the City of Santa Clara for interest at the legal rate according to proof;

8. Against the City of Santa Clara for costs of suit; and

///

9. Against the City of Santa Clara for such other and further relief as the Court may deem just and proper.

Dated: February 7, 2024

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
SANDI L. NICHOLS

By: *Sandi L. Nichols*
SANDI L. NICHOLS
Attorneys for Plaintiff
Moonlite Associates LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure for all such issues for which a trial by jury is allowed.

Dated: February 7, 2024

ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
SANDI L. NICHOLS

By: /s/ Sandi L. Nichols
SANDI L. NICHOLS
Attorneys for Plaintiff
Moonlite Associates LLC